**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM MASSEY,**

                **Plaintiff,**

-vs-                                          **Case No. 6:05-cv-480-Orl-31DAB**

**HEALTH FIRST, INC. and HOLMES**
**REGIONAL MEDICAL CENTER, INC.,**

                **Defendants.**

_____

# ORDER

This matter comes before the Court on the Defendants, Health First, Inc.'s ("Health First") and Holmes Regional Medical Center, Inc.'s ("Holmes," collectively referred to with Health First, where appropriate, as the "Defendants") Motion to Dismiss (Doc. 20),[1] and the Plaintiff, William Massey's ("Massey") Response thereto (Doc. 22).

**I.    Background**

A. Facts

On November 18, 2002, Massey was injured when his motorcycle and a truck collided. Massey was transported unconscious and admitted to Health First's Holmes hospital facility following the collision. Massey was over 65 years old and a Medicare recipient at the time. He remained at Holmes until he was released on November 25, 2002. During this hospitalization, hospital bills accrued on account of Massey's treatment. Throughout his stay at Holmes, Massey

---

[1] This Motion to Dismiss relates to the Plaintiff's Amended Complaint (Doc. 18).

repeatedly advised Holmes of his status as a Medicare recipient.  When Massey was discharged from Holmes, he was transferred to Treasure Coast Healthsouth Rehab Hospital, and thereafter was periodically re-admitted at Holmes for follow-up visits and surgery.

On December 10, 2002, Holmes provided Massey with a document entitled "An Important Message From Medicare: Your Rights While You Are A Medicare Hospital Patient."  This document, which Massey signed, notes, in part, that "You have the right to be fully informed about decisions affecting your Medicare coverage and payment for your hospital stay and for any post-hospital services."  Massey asserts that the Defendants did not inform him that they would not be billing Medicare for his treatment, nor did they inform him that they would be filing liens against the potential liability insurance settlement arising from his accident.

Massey claims that the bills for his hospitalization were bills that Medicare would have covered, that Health First is a Medicare participating provider, and that he timely asked Health First to submit the hospital bills to Medicare.  Massey claims that Health First, however, refused to submit the hospital bills to Medicare for payment under the program's rate schedule because it is lower than the Health First's standard rate schedule.  Health First, instead, filed two liens (the "Liens") requiring any third party payors which might have made payments to Massey because of his accident to instead make those payments to the Defendants to "take care of the hospital's account."  According to Massey, the period in which Health First could have filed a timely Medical claim has expired; Health First, by refusing to submit a Medicare claim, has foreclosed Massey's entitlement to Medicare benefits; and Health First, seeking greater remuneration, has essentially saddled Massey with the liability for the hospital bills.

B. Claims and Arguments

In a six count Amended Complaint, Massey asserts claims for breach of express and implied contracts, waiver, violation of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment, and imposition, seeking: (1) judgements finding that the Defendants breached certain express and implied contracts; (2) a judgment finding that the Defendants violated the Florida Deceptive and Unfair Trade Practices Act; (3) a declaration that the Defendants have waived their entitlement to payment; (4) a judgment finding that the Defendants would be unjustly enriched by the continued maintenance of their liens; (5) a declaratory judgment finding the Defendants liable for imposition; and (6) a declaration that the Liens are void.

The Defendants now move to dismiss the Amended Complaint, arguing first that this Court lacks jurisdiction because of a lack of diversity among the parties and because this action fails to meet the amount in controversy requirement. Second, the Defendants argue that because Massey failed to join the party or parties paying the settlement arising from his accident, he failed to join indispensable parties. Third, the Defendants assert that Massey failed to allege the elements of injunctive relief, and, finally, that the "express contracts" to which Massey refers are not contracts.

## II.     Legal Analysis

A. Standard of review

In ruling on a motion to dismiss, this Court must view the Complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). The Court finds Defendants' Motion to be a facial attack challenging the existence of subject matter jurisdiction, and thus the

Court will limit its review to the face of Massey's Amended Complaint.[2] Because the Defendants have challenged jurisdiction, the burden of proving that this Court has subject matter jurisdiction over these claims falls on the Plaintiff. *Anderson v. U.S.*, 245 F. Supp. 2d 1217, 1222 (M.D. Fla. 2002).

B. Diversity

The Defendants assert that in Massey's original Complaint (Doc. 1), he stated that he resided in Florida, and thus this Court lacks diversity jurisdiction. The Defendants make this argument notwithstanding Massey's allegation in his Amended Complaint that he is a resident of New York, because they argue that the diversity determination should be made at the time the action is commenced. (Doc. 21 at 3). The Defendants appear to further assert that based on the original Complaint, Massey resides in Florida and that any changes in residence made after the filing of the Complaint (and thus the commencement of this action) are irrelevant to the diversity determination. (Id. at 3-4).

The Defendants correctly point out that "diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). However, the Defendants have not cited any law indicating that the citizenship determination for diversity purposes is controlled exclusively by the language in the original complaint. Indeed,

---

[2] "Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

courts have looked to allegations in amended complaints in examining citizenship for diversity jurisdiction purposes. *See Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1352 (M.D. Fla. 2001); *Banci v. Wright*, 44 F. Supp. 2d 1272, 1274 (S.D. Fla. 1999). Thus, a better statement of the principle upon which the Defendants attempt to rely is that whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties *as of* the time the action is commenced, not that this determination is controlled solely by the language used to commence the action. *See Am. Found., Inc. v. Mountain Lake Corp.*, 454 F.2d 200, 202 (5th Cir. 1972) ("Diversity of citizenship is to be determined according to the facts as they existed at the time of the institution of the lawsuit.");[3] *Oh v. Ford Motor Co.*, 79 F. Supp. 2d 1375, 1377 (N.D. Ga. 1999) (noting "general rule that diversity is determined as of commencement" of action).[4] Nevertheless, although the Court rejects the Defendants' argument in this regard, a determination of whether diversity of citizenship exists is still proper, as it impacts the Court's jurisdiction over this case.

The party asserting the existence of diversity jurisdiction bears the burden of pleading the existence of that jurisdiction, and if diversity jurisdiction is challenged that party also bears the burden of establishing jurisdiction by a preponderance of the evidence. *McCormick v. Aderholt*,

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued on or before September 30, 1981.

[4] Moreover, the Court believes that the Defendants have misconstrued the effect of Massey's modified residence allegation. Massey does not appear to have made an attempt to change his residence in order to establish jurisdiction. Instead, Massey appears to have attempted to correct this allegation to make it a more accurate statement of his actual citizenship. A review of his Response confirms this interpretation. (*See* Doc. 22 at 3).

293 F.3d 1254, 1257 (11th Cir. 2002); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). Ultimately, "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Massey only asserts that he is a resident of New York, (*see* Doc. 18 at 1), and essentially concedes that this allegation is insufficient to invoke the Court's diversity jurisdiction, (*see* Doc. 22 at 6).

### III.  Conclusion

Because Massey has not properly invoked this Court's diversity jurisdiction, the Amended Complaint will be dismissed. Accordingly, it is

**ORDERED THAT** the Defendants' Motion to Dismiss (Doc. 20) is GRANTED. Massey will have 20 days to amend his pleadings. Upon repleading, Massey should be prepared to allege sufficient supporting facts to permit the Court to undertake a proper analysis of the diversity of citizenship issue.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 12, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party